UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TREVOR D'ANDRADE, on behalf of                    CASE NO: 11-cv-1800(RA)(MHD)
himself and all others similarly situated,

               Plaintiff,

    v.

WELLS FARGO BANK, N.A.

               Defendant.
-------------------------------------------------------x


<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL
CERTIFICATION OF THE SETTLEMENT CLASS, AND PROVIDING FOR NOTICE**</u>

Michael D. Palmer
Matthew Kadushin
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY  10279
Phone:  (212) 688-5640
Fax:  (212) 688-2548
*Attorneys for Plaintiff and
proposed settlement class members*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..........................................................................................iii

I.      INTRODUCTION ..............................................................................................1

II.     BACKGROUND ................................................................................................2

        A.      Procedural History ..................................................................................2

        B.      Discovery .................................................................................................3

        C.      Settlement Negotiations ..........................................................................4

III.    SUMMARY OF SETTLEMENT TERMS.........................................................4

        A.      The Settlement Fund ...............................................................................5

        B.      The Release..............................................................................................6

        C.      Attorneys' Fees And Costs And Class Representative Incentive Award ...............7

IV.     LEGAL ARGUMENT........................................................................................8

        A.      Class Settlement Procedure.....................................................................8

        B.      The Class Should Be Conditionally Certified For Settlement Purposes.................8

                1.      Plaintiff Has Met All Of The Prerequisites Under Rule 23(a)..................10

                        a.      Numerosity Is Satisfied....................................................10

                        b.      Commonality Is Satisfied..................................................10

                        c.      Typicality Is Satisfied ......................................................11

                        d.      Adequacy Is Satisfied ......................................................12

                2.      The Court Should Certify The Settlement Class Under Rule 23(b)(3)......12

                        a.      Common Questions Predominate ......................................13

                        b.      A Class Action Is A Superior Method To Adjudicate This Matter........................................................................13

C.     The Court Should Appoint JK As Class Counsel ....................................14

D.     Preliminary Approval Of The Settlement Is Appropriate .....................................15

     1.     There Are No Grounds To Doubt The Fairness Of The Settlement Agreement, Which Is The Product Of Serious, Informed, Arm's-Length Negotiations......................................................................17

     2.     The Settlement Contains No Obvious Deficiencies..................................18

     3.     The Settlement Falls Within The Range Of Possible Approval ................19

E.     The Proposed Plan of Class Notice .......................................................................21

V.     CONCLUSION............................................................................................................23

## TABLE OF AUTHORITIES

Page

Cases

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
    493 F.3d 100 (2d Cir. 2007)........................................................................................7

*Agofonova v. Nobu Corp.*,
    No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) ........................................................15

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................8, 12

*Campos v. Goode*,
    10 Civ. 0224 (DF), 2011 U.S. Dist. LEXIS 22959
    (S.D.N.Y. Mar. 4, 2011) ........................................................................7, 11, 14

*Castagna v. Madison Square Garden, L.P.*,
    09-CV-10211 (LTS) (HP), 2011 U.S. Dist. LEXIS 24885
    (S.D.N.Y. Feb. 8, 2011) ........................................................................... 13

*Chi Kong Leung v. Home Boy Rest.*,
    No. 07 Civ. 8779 (RJS) (DFE), 2009 U.S. Dist. LEXIS 12556
    (S.D.N.Y. Feb. 18, 2009). ........................................................................15

*Clark v. Ecolab, Inc.*,
    No.07 Civ. 8623 (PAC), No. 04 Civ. 4488 (PAC), No. 06 Civ. 5672 (PAC)
    2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009)...............................17

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y. 2009) ........................................................................15

*Consolidated Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................................10

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)................................................................................13

*Daniels v. City of New York*,
    198 F.R.D. 409, 417 (S.D.N.Y. 2001) ...........................................................10

*Delaney v. Geisha NYC, LLC*,
    261 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................15

*deMunecas v. Bold Food, LLC*,
     09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644
     (S.D.N.Y. Aug. 23, 2010) ........................................................................13

*Denney v. Deutsche Bank AG*,
     443 F.3d 253 (2d Cir. 2006)....................................................................12

*Detroit v. Grinnell Corp.*,
     495 F.2d 448 (2d Cir. 1974)..............................................................17, 20

*Dorn v. Eddington Sec.*,
     No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931
     (S.D.N.Y. Jan. 20, 2011).........................................................................9

*Dupler v. Costco Wholesale Corp.*,
     705 F. Supp. 2d 231 (E.D.N.Y. 2010) ....................................................20

*Dziennik v. Sealift, Inc.*,
     No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701
     (E.D.N.Y. May 29, 2007) ........................................................................12

*Eisen v. Carlisle & Jacquelin*,
     417 U.S. 156 (1974)................................................................................21

*Frank v. Eastman Kodak Co.*,
     228 F.R.D. 174 (W.D.N.Y. 2005).................................................11, 16, 20

*General Tel. Co. of SW Falcon*,
     457 U.S. 147 (1982)................................................................................10

*Gortat v. Capala Bros.*,
     07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451
     (E.D.N.Y. Apr. 9, 2010)...........................................................................11

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ................................................................14

*In re Drexel Burnham Lambert Group*,
     960 F.2d 285 (2d Cir. 1992)....................................................................11

*In re Initial Pub. Offering*,
     226 F.R.D 186 (S.D.N.Y. 2005) ...........................................................8, 16

*In re. Global Crossing Sec. & ERISA Litig.*,
     225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................18

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................16, 17

*In re. Visa Check/Mastermoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)...............................................................................9, 13

*Joel A. v. Guiliani*,
  218 F.3d 132 (2d Cir. 2000)....................................................................................20

*Khait v. Whirlpool Corp.*,
  No. 06 Civ 6381 (ALC), 2010 U.S. Dist. LEXIS 4067
  (E.D.N.Y. Jan. 20, 2010). ............................................................................. *passim*

*Lewis v. Alert Ambulette Serv. Corp.*,
  No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269
  (E.D.N.Y. Jan. 19, 2012) ). ....................................................................................10

*Marisol A. v. Guiliani*,
  126 F.3d 372 (2d Cir. 1997)....................................................................................11

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................................12

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1998).....................................................................................9

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................13

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)....................................................................................15

*Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................23

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
  471 F.3d 24 (2d Cir. 2006).......................................................................................9

*Morangelli v. Chemed Corp.*,
  275 F.R.D. 99 (E.D.N.Y. 2011) ..............................................................................13

*Pachter v. Bernard Hodes Group, Inc.*,
  10 N.Y.3d 609 (N.Y. 2008) ...............................................................................19, 20

*Pefanis v. Westway Diner, Inc.*,
  No. 08 Civ. 002 (S.D.N.Y. Aug. 7, 2009) ...............................................................15

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    No. 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060
    (S.D.N.Y. Feb. 24, 2012) .................................................................15

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)............................................................11

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)............................................................12

*Sand v. Greenberg*,
    No. 08-cv-7840 (PAC), 2011 U.S. Dist. LEXIS 36266,
    (S.D.N.Y. Mar. 22, 2011) .............................................................15

*Saylor v. Lindley,*
    456 F.2d 896 (2d Cir. 1972)............................................................17

*Spicer v. Pier Sixty LLC,*
    269 F.R.D. 321 (S.D.N.Y. 2010) ...................................................15

*Torres v. Gristede's Operating Corp.,*
    No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC),
    2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. Jun. 1, 2010). ......................................2, 8, 9, 16

*Torres v. Gristede's Operating Corp.,*
    No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC),
    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010). .............................................18

*Toure v. Central Parking Sys.*,
    No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056
    (S.D.N.Y. Sept. 28, 2007)...............................................................12

*Traffic Executive Ass'n,,*
    627 F.2d 631 (2d Cir. 1980)..............................................................2

*Trinidad v. Breakaway Courier Sys.*,
    2007 U.S. Dist. LEXIS 2914
    (S.D.N.Y. Jan. 12, 2007) ...............................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96, 116-17 (2d Cir. 2005) ...................................................15, 16, 21

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    275 F.R.D. 193 (S.D.N.Y. 2011) ...................................................15

*Willix v. Healthfirst, Inc.,*
    No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137
    (E.D.N.Y. Nov. 12, 2010) ...................................................................................9, 19, 22

*Willix v. Healthfirst, Inc.,*
    No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. Lexis 21102
    (E.D.N.Y. Feb. 18, 2011) .............................................................................................18

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................................17

<u>Statues</u>

New York Labor Law § 191 ................................................................................................3, 6

New York Labor Law § 193 ................................................................................................2, 6

New York Labor Law § 198(b) ...........................................................................................3, 6

<u>Rules</u>

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Plaintiff Trevor D'Andrade ("Plaintiff' or "Class Representative"), on behalf of himself and others similarly situated, respectfully submits this memorandum of law in support of his motion for preliminary approval of the Joint Stipulation of Settlement and Release, executed on or about April 2, 2013 ("Settlement Agreement").[1]

## I.   __INTRODUCTION__

Subject to Court approval, the Parties have agreed to settle this case for $850,000.00. The proposed settlement resolves the claims asserted in this action and satisfies all of the criteria for preliminary settlement approval under federal law.   Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) for settlement purposes only; (3) appoint Joseph & Kirschenbaum LLP ("JK") as class counsel; (4) approve the Class Notice, attached as Exhibit A to the Settlement Agreement and the parties' plan for its distribution; (5) set a deadline of 90 from the date Court preliminary approves the settlement (60 days from the mailing of the Class Notice) for Settlement Class Members to object to the settlement or opt out of the Class; and (6) schedule a hearing ("Fairness Hearing") at which the Court will consider Plaintiff's motion for final approval of the settlement, attorneys' fees and costs, and incentive award.

Preliminary approval and conditional class certification will allow the parties to notify the Settlement Class Members of the settlement and of their right to object to or opt out of the

---

[1]   Plaintiff submits in support of their motion a Declaration of Michael D. Palmer ("Palmer Decl."), attaching as Exhibit 1, a Proposed Order, and as Exhibit 2, a copy of the fully executed Joint Stipulation of Settlement and Release (the "Settlement Agreement") along with exhibits.   The exhibits to the Settlement Agreement are as follows:   Exhibit A is the Notice of Proposed Settlement of Class Action Lawsuit, Certification of State Law Class, and Fairness Hearing (the "Class Notice"); and Exhibit B is a Cover Letter to be mailed with the Class Notice ("Cover Letter").   Plaintiff also submits the Declaration of Mark Faktor, Vice President of Retail Finance in the Bonus Commissions Accounting Department at Wells Fargo Home Mortgage ("Faktor Decl.") and the Declaration of Linda Stetson, E-Business Consultant at Wells Fargo Bank, N.A. ("Stetson Decl.").

settlement.  Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but to make an "initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to the class members.  *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).  "If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement."  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y. Jun. 1, 2010) (citation omitted).

## II.    BACKGROUND

### A.    Procedural History

On March 15, 2011, Plaintiff filed a putative class action complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") captioned <u>Trevor D'Andrade, on behalf of himself and others similarly situated, v. Wells Fargo Bank, N.A</u>. in the United States District Court for the Southern District of New York ("Court"), Case Number 11-cv-1800 (the "Lawsuit").  (Wells Fargo Bank, N.A. is hereafter referred to as "Wells Fargo" or "Defendant.")  The complaint was later amended on May 12, 2011 and September 2, 2011.  (Settlement Agreement ¶ 10.)

The Lawsuit alleged, *inter alia*, that Plaintiff and other similarly situated Wells Fargo employees – individuals employed as Home Mortgage Consultants or Home Mortgage Consultant Juniors (collectively referred to as "HMCs")[2] in the state of New York – suffered illegal deductions taken from their wages/commissions.  The Lawsuit set forth four claims for relief: (1) impermissible wage deductions pursuant to New York Labor Law ("NYLL") § 193;

---

[2]    HMCs sell home mortgages to Defendants' customers.  In addition to a guaranteed draw, they are paid commissions based upon their loans sold.

(2) failure to timely pay wages pursuant to NYLL § 191; (3) illegal pay deductions and deductions from wages pursuant to NYLL § 198-b; and (4) breach of contract.  The Lawsuit sought, among other things, reimbursement for illegal deductions, prejudgment interest, liquidated damages, post-judgment interest, and attorneys' fees and costs.  (Settlement Agreement ¶ 11.)

On September 16, 2011, at the Parties request, the Court stayed the matter while the Parties attempted to work towards a settlement.  (Settlement Agreement ¶ 12.)

**B.      Discovery**

The Parties vigorously investigated the claims against Defendant.  Specifically, the Parties exchanged numerous documents and relevant discovery and vigorously debated the legal and factual issues via conference calls, written communications, and in-person meetings. (Settlement Agreement ¶ 13.)

Based upon the information and documents exchanged, the Parties were able to determine the specific deductions which would be at issue if the case proceeded to trial ("Marketing Program" and "Trust Loss" deductions[3]) and to assess the merits of Plaintiff's claims regarding these deductions.   (Settlement Agreement ¶ 14.)

As part of the Lawsuit investigation and discovery, Defendant's Counsel provided a calculation of the Marketing Program and Trust Loss deductions taken from Settlement Class Members.  Detailed spreadsheets were later produced which showed each and every Marketing Program and Trust Loss deduction taken from HMCs during the Class Period (as of the date of the spreadsheets' creation in or around April 2012).  (Settlement Agreement ¶ 15.)  From March

---

[3]    "Trust Loss" deductions refer to deductions from HMCs' commissions for the cost of customer credit checks or home appraisals which were not paid for by the customer.   "Marketing Program" deductions refer to deductions taken for the costs associated with the set-up and maintenance of HMCs' websites.

2005 through March 2012, there were approximately Three Hundred and Ninety Five Thousand Dollars ($395,000) in Marketing Program deductions.  (Stetson Decl. ¶¶ 3, 5.)  From March 2005 through March 2012, there were approximately One Million, Eight Hundred and Seven Thousand Dollars ($1,807,000) in Trust Loss deductions.  (Faktor Decl. ¶¶ 3, 6.)  Extrapolating from this data[4], the total Marketing Program and Trust Loss deductions during the entire class period (March 2005 to the present) amounts to approximately Two Million, Five Hundred Thousand Dollars ($2,500,000).

### C.   Settlement Negotiations

The Parties engaged in extensive discussions and in-person meetings in an attempt to resolve the matter through settlement.  After considering the strengths and weakness of the claims alleged in the Lawsuit and reviewing all necessary discovery, in or around December 2012, the Parties reached a tentative settlement, subject to approval and confirmation by the Court.[5]  Over the next few months the Parties finalized the Settlement Agreement and executed the Settlement Agreement on or about April 2, 2013.     (Settlement Agreement ¶ 16; Palmer Decl. ¶ 6.)

## III.   SUMMARY OF SETTLEMENT TERMS

The Settlement Class includes the Plaintiff/Class Representative and all Wells Fargo employees who were employed as HMCs in the state of New York from March 15, 2005 until the date of preliminary approval of this Settlement or 30 calendar days from the date the

---

[4]   *See* Stetson Decl. ¶ 6; Faktor Decl. ¶ 7.

[5]   Defendant explicitly denies any liability or wrongdoing of any kind whatsoever associated with the claims alleged in the Lawsuit.  Nevertheless, they agreed to enter into the Settlement to avoid the expense, inconvenience and burden of the Lawsuit.  (Settlement Agreement ¶¶ 17, 18.)

Settlement Agreement was fully executed by the Parties, whichever is earlier.  (Settlement Agreement ¶ 5.)

    **A.      The Settlement Fund**

    The total payment to be made by Defendant under this Settlement, including payments to be made to the Settlement Class, Class Representative, Class Counsel and Claims Administrator, is Eight Hundred and Fifty Thousand Dollars and no cents ($850,000.00) (the "Gross Fund Value" or "GFV").  (Settlement Agreement ¶ 32.)

    The Parties have agreed that Kurzman Carson Consultants LLC will act as the claims administrator ("Claims Administrator").   (Settlement Agreement ¶ 9.)   The Claims Administrator will be responsible for mailing the Class Notice to Settlement Class Members, the claims administration process, and distributing the settlement checks. (Settlement Agreement ¶43.)    In that regard, within fifteen (15) days of preliminary approval of the Settlement Agreement, Defendant will send the Claims Administrator the following information for each Settlement Class Member: (1) name, (2) last known address, (3) social security number, (4) date first employed as an HMC, and (5) date last employed as HMC.  (Settlement Agreement ¶ 52.) Within thirty (30) days after preliminary approval of the Settlement Agreement, the Claims Administrator will mail out the Class Notice and Cover Letter to all the Class Members. (Settlement Agreement ¶ 53.)  Class Members will have 60 days from the mailing of the Class Notice (or 90 days from the preliminary approval of the Settlement) to object to or opt out of the Settlement Class.  (Settlement Agreement ¶¶ 57, 58.)

    After the payment of attorneys' fees and costs, a small incentive award to the Class Representative, and the Claims Administrator's costs and fees, the Net Settlement Amount ("NSA") shall be distributed among all class members who have not opted-out of the Settlement

Class on a *pro rata* basis determined by the length of time class members were employed by Defendant.  (Settlement Agreement ¶¶ 33-35.)

The Claims Administrator will analyze Well Fargo's records and award each class member a set amount of points based upon the number of days s/he was employed as an HMC during the Class Period.  Each class member's *pro rata* share will then be determined by dividing each class member's points by the total points for *all* class members and then multiplying this fraction by the NSA.  In addition, each class member is guaranteed a minimum share of $50; accordingly, every class member -- even those who worked for less than a week -- will receive at least $50.   (Settlement Agreement ¶ 35.)

Under the Settlement Agreement, Defendant will pay the full the Settlement Fund of Eight Hundred and Fifty Thousand Dollars ($850,000.00) to the Claims Administrator within five (5) business days after the Court enters an order granting final approval of the Settlement (Settlement Agreement ¶ 45.)  Within fifteen (15) days of the Settlement Effective Date, the Claims Administrator will mail the settlement checks to the class members.   (Settlement Agreement ¶ 46.)

**B.     The Release**

In return for the above consideration, all Settlement Class Members who do not opt out of the Settlement Class will release Defendant from all New York state law claims that were, or could have been, alleged in the Lawsuit that class members suffered illegal deductions taken from their wages/commissions, including the asserted claims for relief under NYLL §§ 191, 193, 198-b and New York contract law, and all derivative claims for prejudgment interest, liquidated damages, post-judgment interest, and attorneys' fees and costs, arising at any point from March 15, 2005 until the date of preliminary approval of this Settlement.   Class members are not

releasing any claims under the Settlement Agreement other than those relating to claims of illegal pay deductions.  (Settlement Agreement ¶ 63.)

### C.  Attorneys' Fees And Costs And Class Representative Incentive Award

JK will apply for an award of one-third of the settlement fund as attorneys' fees and costs.[6]  (Settlement Agreement ¶ 39.)  The Court need not rule on fees and costs now.  JK will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement.[7]

Plaintiff/Class Representative Trevor D'Andrade will apply for an incentive award of Five Thousand Dollars ($5,000.00), in recognition of the services he rendered on behalf of the Class.  (Settlement Agreement ¶ 37.)  Such awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation."  *Khait*, 2010 U.S. Dist. LEXIS 4067, at *26.  Plaintiff will make this motion simultaneously with Plaintiff's motion for final approval of the Settlement Agreement.

Both the application for attorneys' fees and the application for an incentive award are separate from the approval of the Settlement Agreement, and will be fully briefed prior to final approval of the settlement.  (Settlement Agreement ¶¶ 38, 41.)  Thus, the Court need not decide those issues now.

---

[6]   One-third of the settlement fund is "'consistent with the norms of class litigation in this circuit.'"  *Campos v. Goode*, 10 Civ. 0224 (DF), 2011 U.S. Dist. LEXIS 22959, at *20 (S.D.N.Y. Mar. 4, 2011) (citation omitted).  *See also Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *24-25 (E.D.N.Y. Jan. 20, 2010) ("Class Counsel risked time, effort, advanced costs, and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33% is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* [493 F.3d 100 (2d Cir. 2007)]. . . .)

[7]   At the same time, Plaintiff will apply for an award of Settlement Administration costs for the Claims Administrator.  (Settlement Agreement ¶ 42.)

## IV.    LEGAL ARGUMENT

### A.    Class Settlement Procedure

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Judicial proceedings under Fed. R. Civ. P. 23 ("Rule 23") have established a defined procedure and specific criteria for settlement approval in class action settlements.  There are four necessary steps:

> (1)    Certifying the class for settlement purposes;
>
> (2)    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;
>
> (3)    Dissemination of mailed and/or published notice of settlement to all affected Class members; and
>
> (4)    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Khait,* 2010 U.S. Dist. LEXIS 4067 at *4; *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005).  These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.  *Torres*, 2010 U.S. Dist. LEXIS 75362 at *9-10.

With this motion, Plaintiff requests that the Court take the first three steps in the settlement approval process by certifying the class for settlement purposes and granting preliminary approval of the Settlement Agreement, approving the Class Notice, and authorizing distribution of the Class Notice.

### B.    The Class Should Be Conditionally Certified For Settlement Purposes.

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes.  *See Amchem Prods. v.*

*Windsor,* 521 U.S. 591, 620 (1997) (explaining that courts should examine whether the proposed class would be adequately represented and fairly treated by a class action settlement). Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *Dorn v. Eddington Sec.*, No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan. 20, 2011).

The Court may certify a class where a plaintiff demonstrates that the proposed class and proposed class representative meet the prerequisites of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court has great discretion in determining whether to certify a class. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137 at *5-6 (E.D.N.Y. Nov. 12, 2010). However, in exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10 (citation omitted).

9

1.      **Plaintiff Has Met All Of The Prerequisites Under Rule 23(a).**

Plaintiff has satisfied the numerosity, commonality, typicality, and adequacy of representation requirements under Rule 23(a).

a.      **Numerosity Is Satisfied.**

The parties estimate that the Class includes over 900 members.   (Palmer Decl. ¶ 7.) Thus, the Class is so numerous that joinder of all Class Members is impracticable.   *See Consolidated  Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

b.      **Commonality Is Satisfied.**

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

Here, there are several questions of law and fact common to the Settlement Class in this case, including the primary issue in this case, *i.e.*, whether the deductions taken from HMCs wages violated the NYLL.  Plaintiff asserts that Defendant took the same types of deductions from all HMCs and that all HMCs were subject to the same compensation policies and practices. Accordingly, the commonality factor is met.  *See Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269, at *25-26 (E.D.N.Y. Jan. 19, 2012) ("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of . . . unlawful deductions from New York class Plaintiffs' pay[.]")

### c.    Typicality Is Satisfied.

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting, *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). *See, e.g. Campos*, 2011 U.S. Dist. LEXIS 22959, at *6-7 (finding typicality met because "[t]he named plaintiffs suffered the same alleged injury as did the class members – Defendants' [alleged violation of the NYLL]" and "because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims"). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Gortat v. Capala Bros.*, 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. Apr. 9, 2010).

Here, typicality is satisfied because the Plaintiff was subject to the same types of deductions and alleges the same legal claims as all HMCs. *Trinidad v. Breakaway Courier Sys.*, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) ("Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability . . . .").

### d.    Adequacy Is Satisfied.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure

that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Central Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting, *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Here, Plaintiff Trevor D'Andrade is an adequate representative of the proposed Class. He has fairly and adequately represented the class and assisted JK in prosecuting the action and obtaining the settlement.  Further, there is no indication here that the Plaintiff and the Class Members' interests are at odds.  (Palmer Decl. ¶ 8.)  Accordingly, adequacy is satisfied.

### 2.     The Court Should Certify The Settlement Class Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

In sum, the Class is suitable for certification, and the Court should certify the Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the Settlement Agreement.

### a.  Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney*, 280 F.3d at 136.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the Class are unified by common factual allegations: all Settlement Class Members were employed by Defendants as HMCs, and all HMCs were subject to the same types of deductions from their commissions.  The Class is also unified by a common legal question:  whether the taking of the deductions from HMCs' commission was a violation of New York law.  *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 115 (E.D.N.Y. 2011) (finding "[t]he predominance test . . . readily satisfied" where the plaintiff alleged that all class members were subject to the same allegedly illegal deductions).  *See also Castagna v. Madison Square Garden, L.P.*, 09-CV-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 24885, at *4-5 (S.D.N.Y. Feb. 8, 2011) ("Common factual allegations — that Defendant failed to pay Class Members for all overtime they worked - and a common legal theory — that Defendant violated the FLSA and NY Labor Law - predominate over any factual or legal variations among class members."); *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *7-8  (S.D.N.Y. Aug. 23, 2010) (same).

### b.  A Class Action Is A Superior Method To Adjudicate This Matter.

Rule 23(b)(3)'s second part analyzes whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  *See also Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).

13

Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

A class action "is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Campos*, 2011 U.S. Dist. LEXIS 22959, at *8.  JK is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  (Palmer Decl. ¶ 9.)  Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *Campos*, 2011 U.S. Dist. LEXIS 22959 at *8.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1023 (9th Cir. 1998) (individual actions for relatively small claims would result in less "settlement leverage, significantly reduced resources and no greater prospect for recovery").  Finally, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within New York state, including Manhattan.

### C.    The Court Should Appoint JK As Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(C).

JK meets all relevant criteria. They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage

and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class.  Courts have repeatedly found JK to be adequate class counsel in wage and hour class actions. *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) ("[JK] have significant experience prosecuting and settling wage and hour class actions, and are well-versed in both wage and hour and class action law.") *Sand v. Greenberg*, 08-cv-7840 (PAC), 2011 U.S. Dist. LEXIS 36266, at *6 (S.D.N.Y. Mar. 22, 2011) ("Plaintiffs' counsel, . . . Joseph, Herzfeld, Hester & Kirschenbaum, LLP . . ., have a record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on this case are competent and experienced."); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("There is no dispute that [JK] are qualified and experienced in class action law and wage and employment litigation in New York.")  *See also e.g., Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002 (S.D.N.Y. Aug. 7, 2009); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Chi Kong Leung v. Home Boy Rest.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009).

Therefore, the Court should appoint the undersigned to serve as counsel for the Class pursuant to Rule 23(g).

### D.    Preliminary Approval Of The Settlement Is Appropriate.

There is a strong preference in the law for the resolution of class action litigation through settlement.  *See McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan*

*Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations omitted).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input at a fairness hearing.   The fairness hearing affords class members "an opportunity to present their views of the proposed settlement."  *In re Initial Public Offering,* 226 F.R.D. at 191. Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members, and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.")

 "Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties." *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10-11.  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."   *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Khait*, 2010 U.S. Dist. LEXIS 4067 at *13 (same).  Consequently, when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to

turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Wright v. Stern*, 553 F. Supp. 2d 337, 343-344 (S.D.N.Y. 2008) (quoting, *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).  *See also Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) ("[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits.") (internal citations omitted).

In deciding whether to grant preliminary approval, a court considers (1) whether there are any grounds to doubt the fairness of the settlement; (2) whether the settlement suffers from any "other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys"; and (3) whether the settlement "appears to fall within the range of possible approval . . ."  *In re Prudential*, 163 F.R.D. at 209. The proposed settlement satisfies these requirements and should be preliminarily approved.

> **1.      There Are No Grounds To Doubt The Fairness Of The Settlement Agreement, Which Is The Product Of Serious, Informed, Arm's-Length Negotiations.**

The Settlement is the result of the diligent efforts and informed arm's-length negotiations among the settling parties.  Defendant has asserted (and continues to assert) numerous defenses, and has expressly denied any wrongdoing or legal liability arising out of the conduct alleged in this action.  The Parties both recognize the risks inherent in continuing this litigation, and that a trial in this action, and possible appeals, could take several years.  The Settlement confers substantial benefits upon the Class, and based upon their evaluation of the claims and legal and factual arguments and review of the discovery exchanged, JK has determined that the Settlement is in the best interests of the Class.  *See Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623 (PAC), No. 04

17

Civ. 4488 (PAC), No. 06 Civ. 5672 (PAC), 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) ("Absent fraud or collusion, [courts] be should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted).

### 2.    The Settlement Contains No Obvious Deficiencies.

The proposed settlement has no obvious deficiencies. No segment of the class is favored in the settlement.  Rather, the class fund is divided *pro rata* based upon the length of time each class member worked for Wells Fargo.

The settlement provides only a modest incentive award of $5,000 for the Plaintiff, who was instrumental in facilitating a resolution of this matter.  Incentive awards for time, effort, risk, and service do not improperly grant preferential treatment to class representatives.  Rather, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."  *Khait,* 2010 U.S. Dist. LEXIS 4067 at *26 (approving awards of $15,000 and $10,000 for named plaintiffs in a wage and hour class action).  *See also, e.g. Willix v. Healthfirst, Inc.*, No. 07-Civ.-1143(ENV)(RER), 2011 U.S. Dist. Lexis 21102, at *19-20 (E.D.N.Y. Feb. 18, 2011) (approving $75,000 in service awards for five class representatives); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), No. 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 139144, at *22 (S.D.N.Y. Dec. 21, 2010) (approving service awards totaling $225,000 for fifteen plaintiffs).

Finally, the settlement does not mandate excessive compensation for JK, which will apply for an award of attorneys' fees and costs equal to a one-third of the settlement fund.

> In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role.  Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.

*Khait,* 2010 U.S. Dist. LEXIS 4067 at *22-23 (internal citations omitted).  A "[c]lass [c]ounsel's request for 33 1/3% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'" *Willix*, 2010 U.S. Dist. LEXIS 139137 at *17 (collecting cases).

### 3.     The Settlement Falls Within The Range Of Possible Approval.

As explained above, the Settlement Agreement was reached only after arms' length negotiations between the Parties and their counsel, who fully considered the advantages and disadvantages of continued litigation.   JK, which has a great deal of experience in the prosecution and resolution of wage and hour class actions, has carefully evaluated the merits of this case and the proposed settlement.  The Settlement Fund represents an appropriate recovery given the strengths and weaknesses of Plaintiff's and class members' claims and the risks and potential recovery if the case proceeds forward in litigation.

While JK and the Plaintiff remain confident in the merits of Plaintiff's claims, they acknowledge that there are considerable risks.  Most significantly, JK recognizes that there is a very serious risk that Plaintiff might not be successful on his claim for the recovery of the Trust Loss deductions, which amount to the vast majority of the damages (82%).

Pursuant to *Pachter v. Bernard Hodes Group, Inc*., deductions are permissible if they are taken before the commission is considered "earned."  10 N.Y.3d 609, 617 (N.Y. 2008).  Parties

may agree (either expressly or by implication) that the commission is not deemed "earned" until after certain deductions are taken.  *Id.* at 617-618.  Accordingly, the central issue in this case is whether the Parties had previously agreed that deductions would be taken prior to HMCs' commissions being earned.

In HMCs' Incentive Compensation Plans, Defendant notified HMCs that the trust loss deduction would be taken from HMC's "commission credit".  Accordingly, Plaintiff and the Settlement Class Members ran a real risk that the Court might find that HMCs had agreed that their commissions were not earned until after the Trust Loss deductions were taken.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Khait,* at *18 (quoting, *Frank*, 228 F.R.D. at 186).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.  Cf. Detroit*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").  "[A] 'settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair.'"  *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010) (quoting, *Joel A. v. Guiliani,* 218 F.3d 132, 144 (2d Cir. 2000)).

Here, the settlement fund represents 34% of the total actual damages which were potentially recoverable on behalf of the class.  Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the proposed settlement is very reasonable and

falls within the range of possible final approval.   Thus, the Court should grant preliminary approval of the Settlement Agreement and direct that notice of it be given to the Class.

> ### E.        The Proposed Plan Of Class Notice

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P.23(c)(2)(B).   *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974)   ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(1) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement, voluntary dismissal, or compromise.]"   Fed. R. Civ. P. 23(e)(B).   "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."   *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted).   "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"   *ld.* at 114 (internal citations omitted).

Here, the Claims Administrator will disseminate the Class Notice to all Class Members via first class mail at their last known addresses as maintained by Defendant.  For any notice returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt a skip trace using the computer databases available and the information provided by Defendant.

Those individuals who are located using the skip trace will be re-mailed a copy of the Class Notice. Thus, the proposed method of distributing notice comports with Rule 23 and the requirements of due process.

As for the content of the Class Notice, Rule 23(c)(2)(B) specifies that:

> The notice must concisely and clearly state in plain, easily understood language:
>
> (i)   the nature of the action;
>
> (ii)  the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)   that the court will exclude from the class any member who requests exclusion;
>
> (vi)  the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Class Notice comports with the rule in all respects. It describes the nature of Lawsuit, claims and defenses asserted, the terms of the settlement, the definition of the class, and the date and time of the Fairness Hearing. Further, the Class Notice informs the class about the proposed allocation of attorneys' fees and incentive award for the Plaintiff, provides that class members may retain separate counsel, discloses class members' right to exclude themselves from the settlement or object to any of its terms and specifies the deadline and procedure for doing so, and warns of the binding effects of the settlement on those persons who remain in the Settlement Class. (Settlement Agreement, Ex. A.) *See Willix,* 2010 U.S. Dist. LEXIS 139137 at *9 (approving notice where it "satisfies [the Rule 23(c)(2)(B)] requirements and adequately puts

Rule 23 Class Members on notice of the proposed settlement"). *Cf. In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Class.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for preliminary approval of the proposed settlement, conditional certification of the Settlement Class, and approval of the Class Notice.


Dated: New York, New York                    Respectfully submitted,
       April 5, 2013

                                             JOSEPH & KIRSCHENBAUM LLP


                                             __/s/ Michael D. Palmer _____
                                             Michael D. Palmer
                                             Matthew D. Kadushin
                                             233 Broadway, 5th Floor
                                             New York, NY 10279
                                             (212) 688-5640
                                             (212) 688-2548 (fax)

                                             *Attorneys for Plaintiff and the proposed
                                             settlement class*